UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL ALEXANDER OCANDO,

Petitioner,

v.

WARDEN et al.,

Respondents.

CASE NO. 2:26-cv-03783-DGE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 5)

Before the Court is Petitioner Michael Alexander Ocando's petition for writ of habeas corpus. (Dkt. No. 5.) For the reasons identified herein, the Court GRANTS the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Venezuela. (Dkt. No. 8 at 2.) He entered the United States without being admitted or paroled on or around September 26, 2023, and was encountered

by United States Border Protection ("USBP").[1] (*Id.*) Petitioner was taken to the Rio Grande Valley Centralized Processing Center and processed for expedited removal, then transferred to the South Texas Family Residential Center. (*Id.*)

On September 30, 2023, Petitioner was referred to United States Citizenship and Immigration Services ("USCIS") to begin the credible fear review process.[2] (*Id.*) USCIS presumably found credible fear in favor of Petitioner because on October 9, 2023, he was served a Notice to Appear ("NTA") that alleged he was removable from the United States. (*Id.*) This NTA scheduled Petitioner for an immigration court hearing on March 19, 2024. (*Id.* at 2.) Petitioner was released on parole pursuant to 8 U.S.C. § 1182(d)(5) on October 11, 2023. (*Id.* at 2; Dkt. No. 9-5.) Petitioner's parole was for a period of one year, expiring in October 2024. (Dkt. Nos. 8 at 2; 9-5.) Notwithstanding the expiration of parole, Petitioner's next immigration court hearing was scheduled for March 10, 2028 in Utah. (Dkt. No. 9-3 at 3.)

On August 15, 2026, Petitioner was arrested for driving under the influence. (Dkt. No. 9-4.) He was taken to Washington County Jail in Hurricane, Utah. Two days later, Enforcement and Removal Operations ("ERO") Salt Lake City encountered him, and confirmed he was a citizen and national of Venezuela. (Dkt. No. 8 at 3.)

On August 27, 2026, Petitioner pled no contest to impaired driving. (Dkt. No. 9-4 at 5.) A suspended fine of $1,390 was imposed subject to his release from immigration custody. (*Id.* at

---

[1] There appears to be a slight inconsistency in the record about when Petitioner was arrested by border patrol. The Declaration of Deportation Officer Ian Bloom, and the Form I-213, all state that Petitioner was arrested by United States Border Patrol on September 26, 2023. (*See* Dkt. Nos. 8 at 2; 9-3 at 2.) The Respondents' return memorandum provides that Petitioner was apprehended on September 27, 2023. (*See* Dkt. No. 7 at 5.)

[2] Petitioner's placement in full removal proceedings, rather than immediate removal from the United States, indicates an asylum officer or immigration judge made a preliminary determination of a credible fear of persecution, torture, or return to Petitioner's country. *See* 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)).

5–6.) ERO detained Petitioner from Washington County Jail, where he remained until he was transferred to the Florence Staging Facility in Arizona on September 1, 2026. (Dkt. No. 8 at 3.) On September 3, 2026, Petitioner was transferred to the Northwest Immigration and Customs Enforcement ("ICE") Processing Center ("NWIPC"). (*Id.*)

**B. Procedural Background**

Petitioner filed a petition for writ of habeas corpus on October 8, 2026, arguing that Respondents violated his procedural due process rights under the Fifth Amendment. (Dkt. No. 5.) Pursuant to the Court's scheduling order (*see* Dkt. No. 4), Respondents filed a return on October 22, 2026. (Dkt. No. 7.) Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). (*Id.* at 6–7.) Since Petitioner was paroled into the United States, Respondents assert he was never considered admitted into the country, and once his parole expired in October 2024, his status returned to that of an applicant for admission. (*Id.* at 7–8.) Petitioner did not file a traverse. (*See* docket generally.)

**II. LEGAL STANDARD**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance

of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III. ANALYSIS

### A. Petitioner is Not Detained Under 8 U.S.C. § 1225(b)

Respondents assert Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) because he was detained near the border shortly after entry, placed in expedited removal proceedings, and released on parole pursuant to 8 U.S.C. § 1182(d)(5). (Dkt. No. 7 at 6.) Respondents further contend that upon automatic termination of Petitioner's parole, the government was permitted to treat him "as seeking admission despite a long period of living in the United States while on humanitarian parole." (*Id.* at 9) (quoting *Pantoja Sanchez v. Hernandez*, No. 2:26-cv-00884-TMC, 2026 WL 1506130, at *3 (W.D. Wash. May 29, 2026)).

The Secretary of Homeland Security may, in their discretion, parole a noncitizen seeking admission into the United States under such conditions as they may prescribe "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). Parole may be terminated either automatically or with notice. *See* 8 C.F.R. § 212.5(e). Parole is *automatically* terminated without written notice "upon the departure from the United States of the [noncitizen]" or "if not departed, at the expiration of the time for which parole was authorized. 8 C.F.R. § 212.5(e)(1)(i)-(ii). Whether termination occurs automatically or through written notice, the noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. §§ 212.5(e)(1)(ii), 212(e)(2)(i). The noncitizen "shall again be released on parole" only if an "exclusion, deportation, or removal order cannot be executed within a reasonable time," unless it is determined by an official with authority pursuant to § 212.5(a) that continued custody is appropriate. 8 C.F.R. § 212.5(e)(2)(i). To summarize, once

parole terminates, the regulations require re-detention, and a noncitizen may only be released on parole again if a removal order cannot be executed within a reasonable time.

Here, it cannot be disputed Petitioner was released on parole and that such parole terminated automatically on October 11, 2024. (*See* Dkt. No. 9-5.) At that point in time, Petitioner reverted to the status he maintained at the time he was detained on September 26, 2023, and should have been taken into custody. *See* 8 C.F.R. § 212.5(e)(2)(i). Instead, however, Respondents chose to disregard their own regulations and release Petitioner under supervision into the United States under some status *other than* parole.

Petitioner could have been released again on parole only if he was subject to an "exclusion, deportation, or removal order [that could not] be executed within a reasonable time." *Id.* On October 11, 2024, Petitioner was not subject to any removal order. Thus, Respondents had no authority under § 212.5(e)(2)(i) to release Petitioner on parole after October 11, 2024, which means Petitioner's release must have been governed by something other than the mandatory detention provision of 8 U.S.C. § 1225(b).

This conclusion is supported by Respondents' Notice of Custody Determination which was issued "[p]ursuant to the authority contained in section 236" of the INA, codified as 8 U.S.C. § 1226. (Dkt. No. 9-7 at 2.) It also is supported by the NTA, which identifies Petitioner was not an arriving alien and that he had neither been admitted or paroled in the United States. (Dkt. No. 9-2 at 2.) Moreover, at the time he was detained, Respondents made no mention that the basis for re-detaining Petitioner was the alleged expiration of his parole. (*See generally* Dkt. No. 9-3 at 3.) Lastly, this conclusion is supported by the fact that Petitioner was allowed to be at liberty from October 11, 2024 to August 27, 2026, nearly two full years, before being re-detained.

Because the Court finds Petitioner remained at liberty after October 11, 2024, on a status other than parole, the Court finds and concludes Petitioner is not subject to the mandatory detention provisions of § 1225(b).

**B. Petitioner's Re-Detention Violated Due Process**

Petitioner argues that, by re-detaining him without affording him any written notice or meaningful opportunity to be heard prior to re-detention, Respondents deprived him of his liberty in violation of the Due Process Clause of the Fifth Amendment. (Dkt. No. 5 at 3.)

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." 424 U.S. at 335.

1. <u>Private interest</u>

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from

detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

This Court has previously identified that an individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon renewed detention. *See Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding the petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).

Here, Petitioner was initially detained on September 26, 2023, and released on parole a little over two weeks later. (Dkt. No. 8 at 2.) Despite the expiration of his parole on October 11, 2024 (Dkt. No. 9-5 at 2), Respondents authorized Petitioner to remain at liberty, and such authorization created a liberty interest. "Once established, Petitioner's interest in liberty [became] a constitutional right which [could] only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment [was] warranted." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)).

Petitioner's strong private interest in his continued liberty means the first *Mathews* factor weighs in his favor.

2. <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation *without any hearing* is high.

Respondents seek to justify Petitioner's re-detention based on their argument that he is subject to mandatory detention pursuant to § 1225(b) and that pre-arrest process would not have altered his status. (Dkt. No. 7 at 9–10.) As explained above, Petitioner's current detention is not governed by § 1225(b)— Petitioner's parole had expired nearly two years prior to the date of his detention. Respondents had knowledge of Petitioner's presence in the United States, authorized that presence, and then without notice extinguished his liberty. As the purported basis for Petitioner's current detention is not supported by the facts and circumstances presented, the risk of erroneous deprivation is high.[3]

Although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude Petitioner's circumstances presented such an urgent scenario. The second factor favors Petitioner.

3. <u>Government's interest</u>

---

[3] Although Respondents identify Petitioner was re-detained after his release from jail (Dkt. No. 7 at 10), Respondents do not contend that Petitioner's misdemeanor conviction subjects Petitioner to mandatory detention. Thus, the risk of erroneous deprivation remains high because Petitioner was not given an opportunity to address any claim that this misdemeanor conviction supports imposing detention.

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Admittedly, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690. However, Respondents offer no argument that Petitioner is a flight risk or a danger to the community. Accordingly, providing notice and an opportunity to be heard would not have been unduly burdensome when weighed together with the liberty and governmental interests involved.

In sum, all three *Mathews* factors favor Petitioner. Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

**CONCLUSION**

Accordingly, the Court GRANTS Petitioner's writ of habeas corpus (Dkt. No. 5) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within <u>**ONE (1) day**</u> of this Order. Petitioner shall be subject to the same conditions previously governing his release.
2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.

3. Within **<u>TWENTY-FOUR (24) hours</u>** of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

Dated this 9th day of November, 2026.

David G. Estudillo
United States District Judge